UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIA SLATER,

       Plaintiff,                      Civil Action No. 21-cv-11326
                                            HON. BERNARD A. FRIEDMAN

vs.

AMERICAN POSTAL WORKERS
UNION, *et al.*,

       Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' RENEWED MOTIONS TO DISMISS THE AMENDED COMPLAINT

I.    Introduction

Maria Slater commenced this action under the Postal Reorganization Act, 39 U.S.C. § 1208(b), against the United States Postal Service (the "Postal Service") and her representing union, the American Postal Workers Union ("APWU"). The amended complaint alleges that (1) the Postal Service violated its collective bargaining agreement with the union when it terminated Slater's employment without just cause, (2) APWU breached its duty to fairly represent Slater when she contested the termination, and (3) the union violated its own constitution by refusing to advance Slater's grievance to arbitration.

Before the Court are defendants' renewed motions to dismiss the amended complaint. (ECF Nos. 23, 24). Slater responded to both motions. (ECF Nos. 25, 26). Only APWU filed a reply. (ECF No. 27). The Court will decide the motions without oral argument pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, the Court shall grant the motions.

II.  Background

   A.  *Factual History*

The Postal Service employed Slater as an occupational health nurse since April 2006. (ECF No. 5, Page ID.55, ¶ 6). APWU represents her pursuant to a collective bargaining agreement between the Postal Service and the union. (*Id.*, PageID.56, ¶ 8). In August 2020, the Postal Service began investigating whether Slater sufficiently justified her need to take COVID-19 related medical leave and whether she stored Postal Service employee medical records improperly. (*Id.*, PageID.56-59, ¶¶ 15-22, 29-31).

Upon concluding its investigation, the Postal Service sent Slater a notice of removal, terminating her employment effective February 5, 2021. (*Id.*, PageID.60, ¶ 36). Slater contested the grounds for the termination, but her local union steward, Suzanne DeWeese, allegedly filed the initial grievance out-of-time. (*Id.*, PageID.60-61, ¶¶ 36-39).

After DeWeese was unable to resolve the grievance at the first step, APWU's national business agent, Judy McCann, assumed responsibility for Slater's representation at the second step. (*Id.*, PageID.61, ¶ 42). McCann informed Slater from the outset that advancing the grievance through a Step 2 arbitration would be futile. (*Id.*, PageID.62, ¶ 43). McCann explained that she "had lost several cases" at arbitration where the Step 1 grievance was filed out-of-time. (*Id.*, ¶¶ 43-44).

On May 24, 2021, McCann settled the Step 2 grievance with the Postal Service *without* Slater's consent. (*Id.*, ¶ 46). The settlement required Slater to resign within 14 days (or face removal) and prohibited her from applying for future employment with the Postal Service. (*Id.*, ¶¶ 47-48). McCann advised Slater that she could not appeal the settlement, "that it was final and binding and that she could not appeal the matter under the APWU Constitution." (*Id.*, PageID.63, ¶ 50).

B. *Procedural History*

Slater filed this lawsuit within weeks of the Step 2 settlement. (ECF No.1). The initial complaint alleged causes of action for (1) breach of contract against the Postal Service, and (2) breach of the duty of fair representation against APWU. (*Id.*, PageID.9-10, ¶¶ 48-53). Slater subsequently amended the complaint to include a claim against APWU for breaching its own constitution. (ECF No. 5, PageID.64-65, ¶¶ 59-63). Both the Postal Service and the union moved to dismiss the respective claims asserted against them. (ECF Nos. 9, 12).

3

In the interim, Slater filed a charge against APWU with the National Labor Relations Board ("NLRB") alleging, among other things, that the union refused to process her grievance "for arbitrary or discriminatory reasons or in bad faith." (ECF No. 16-3, PageID.298). Slater eventually supplemented the charge to accuse her local union, the National Postal Professional Nurses Union ("NPPN"), of filing the Step 1 grievance out-of-time for "arbitrary, capricious, and discriminatory reasons." (ECF No. 16-4, PageID.302). The Court stayed this litigation pending the NLRB's determination. (ECF No. 20).

On October 5, 2021, the NLRB's regional director dismissed the charge for "insufficient evidence." (ECF No. 21-1, PageID.325). Slater declined to appeal. (ECF No. 21, PageID.321). The Postal Service and APWU now renew their motions to dismiss the amended complaint. (ECF Nos. 23, 24).

III.  Legal Standards

When reviewing a motion to dismiss the complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the

legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quotation omitted).

IV. <u>Analysis</u>

    A. *Statutory Overview*

The Postal Reorganization Act ("PRA") creates an enforcement mechanism for violations of collective bargaining agreements between the Postal Service and the unions representing Postal Service employees. 39 U.S.C. § 1208(b). Since the PRA is an "analogue of Section 301(a) of the Labor Management Relations Act of 1957," they share the same analytic framework. *Lawson v. Truck Drivers, Chauffeurs & Helpers, Local Union 100*, 698 F.2d 250, 255 (6th Cir. 1983).

"Hybrid" section 301 actions enable employees to sue both their union and their employer, without exhausting the procedural remedies delineated in a collective bargaining agreement. *Driver v. United States Postal Serv.*, 328 F.3d 863, 868 (6th Cir. 2003). Hybrid suits comprise two distinct claims: one against the employer for violating the collective bargaining agreement under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and a separate one against the union for breaching its implied duty of fair representation under the National Labor Relations Act ("NLRA"). 29 U.S.C. § 159(a). The two claims are interdependent; meaning that the employee may prevail on either cause of action only by prevailing in both. *Driver*, 328 F.3d at 868. To withstand a motion to

5

dismiss, the employee must plausibly allege that (1) the employer violated the collective bargaining agreement, and (2) the union breached its duty of fair representation. *Id.*

The duty of fair representation stems from the union's role as the employee's exclusive bargaining representative. *Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192, 202 (1944). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). This test applies to all union activities, *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991), and encompasses "three separate and distinct" avenues "by which a union may be found to have breached its duty." *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir. 1994).

B.   Res Judicata

APWU first maintains that *res judicata* precludes the Court from considering the fair representation claim because the NLRB's regional director already determined that Slater lacked sufficient evidence to support her charge. (ECF No. 23, PageID.346-47; ECF No. 21-1, PageID.325).

*Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 586 (6th 1994) directly refutes this position. There, the Sixth Circuit Court of Appeals held that *res judicata* does not attach to the NLRB's refusal to issue a complaint since that decision is not

6

the product of an adjudication. *See also Holbrook v. Harman Automotive*, 58 F.3d 222, 226 n.1 (6th Cir. 1995) ("Because the NLRB determination was not the product of an adjudicatory hearing, that determination is not to be treated as preclusive."). Other federal appellate courts share this view. *See, e.g., Warehousemen's Union Local No. 206 v. Continental Can Co.*, 821 F.2d 1348, 1351 (9th Cir. 1987); *Courier-Citizen Co. v. Boston Electrotypers Union No. 11*, 702 F.2d 273, 277 n.6 (1st Cir. 1983).

Because the NLRB dismissed her charge without conducting an adjudicatory hearing, this Court may freely assess the merits of Slater's fair representation claim.

C. *Breach of the Duty of Fair Representation*

APWU next contends that the fair representation claim is not actionable because Slater's local union – NPPN – is to blame for filing her Step 1 grievance out-of-time. (ECF No. 23, PageID.348-49).

APWU and NPPN are separate legal entities. *Kassab v. Aetna Indus.*, 54 F. App'x 819, 824 (6th Cir 2002). International unions are accountable for the conduct of their local affiliates only where they "instigated, supported, ratified, or encouraged those actions," or where the local affiliate acted "in accordance with their fundamental agreement of association." *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 409 (6th Cir. 1999) (cleaned up).

7

The amended complaint fails to allege that APWU played any role in NPPN's untimely filing of Slater's grievance. (ECF No. 5, PageID.64, ¶¶ 56-58). All the supporting documents indicate that Suzanne DeWeese represented Slater during the Step 1 and Step 2 grievances in her capacity as NPPN's steward. (ECF No. 9-3, PageID.127; ECF No. 9-4, PageID.131).[1] Nor does Slater attribute the untimely filing of her grievance to any provision in NPPN's "fundamental agreement of association" with APWU.

Slater argues that APWU "supported, ratified and encouraged" NPPN's errors when it agreed to settle her grievance with the Postal Service rather than arbitrate the dispute. (ECF No. 25, PageID.382, 386). A union's decision to forgo arbitrating a member's grievance does not breach the duty of fair representation where it determines, through "reasoned judgment," that the member cannot prevail. *Blesedell v. Chillicothe Tel. Co.*, 811 F.3d 211, 223 (6th Cir. 2016).

The amended complaint acknowledges that APWU declined to arbitrate Slater's grievance, and instead elected to settle the dispute, after reasonably concluding that the untimeliness of the grievance would doom her chances of success. (ECF No. 5, PageID.62, ¶¶ 43-44, 46). APWU's national business agent,

---

[1] Reviewing these documents is permissible on a Rule 12(b)(6) dismissal motion because Slater refers to them in the amended complaint and they are integral to her fair representation claim. *See Young v. Int'l Union UAW, Local 651*, 686 F. App'x 304, 308 (6th Cir. 2017) (considering grievance documents attached to motion to dismiss).

Judy McCann, advised Slater that "the arbitrator would not rule in her favor" as McCann had already "lost several cases where the grievance was not timely . . ." (*Id.*, ¶ 43). APWU had no obligation to pursue an arbitration when, based upon previous experience, it knew it could not win.[2] *See Konen v. Int'l Bhd. of Teamsters, Local 200*, 255 F.3d 402, 407 (7th Cir. 2001) ("so long as a colorable argument could be made at the time of the union's decision to drop its support that the grievance is meritless . . . the decision cannot be regarded as arbitrary.").

APWU's settlement of the grievance without Slater's consent does not either give rise to a fair representation claim. (ECF No. 5, PageID.64, ¶ 56). The law in this circuit is clear: "a union does not breach the duty of fair representation by failing to consult with a worker before settling his grievance."[3] *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 631 (6th Cir. 2009); *see also Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975).

Nor does APWU's purported violation of its own constitution qualify as a breach of the fair duty of representation. (ECF No. 5, PageID.64). "[A] union's duty of fair representation does not arise from the provisions of a union's constitution,"

---

[2] Unlike the union in *Linton v. United Parcel Serv.*, 15 F.3d 1365, 1371 (6th Cir. 1994) – a case Slater urges this Court to follow – APWU did not "simply g[i]ve up" on her grievance. (ECF No. 25, PageID.380-85).

[3] APWU's alleged failure to provide Slater with a copy of her grievance papers does not constitute a breach of the duty of fair representation for this same reason. (ECF No. 5, PageID.61, ¶ 39).

9

but instead "from the union's exclusive authority under the NLRA to represent all employees in a bargaining unit." *Akins v. Zeneca, Inc.*, No. 94-5132, 1995 U.S. App. LEXIS 21536, at *21 (6th Cir. Jul. 27, 1995); *see also Moore v. Local Union 569 of Int'l Bhd. of Elec. Workers*, 989 F.2d 1534, 1545 (9th Cir. 1993) (holding that the "duty described by the district court has its basis in the union constitution and bylaws and not in the NLRA, and, thus, it is not the *statutory* duty of fair representation.") (emphasis in original). Whether a union violated its own constitution, therefore, presents an inquiry separate from whether it breached the duty of fair representation.

Most importantly, the amended complaint does not plausibly establish that APWU's alleged "actions or omissions" – once NPPN already filed Slater's grievance out-of-time – "more than likely affected" its outcome. *Blesedell*, 811 F.3d at 221 (cleaned up); *see also Dushaw v. Roadway Express, Inc.*, 66 F.3d 129, 132 (6th Cir. 1995). And without alleging that APWU's conduct impacted the grievance adversely there is no plausible basis to infer the union caused Slater's injuries.

Because the fair representation claim falters on all these grounds it cannot withstand Rule 12(b)(6) dismissal.

    D.    *Breach of the APWU Constitution*

In *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 98 (1991), the United States Supreme Court first recognized that individual union members may hold their unions accountable under section 301 of the LMRA for breaching the

10

union's constitution or by-laws. To state a plausible claim for relief, the union member must first identify the relevant constitutional provisions the union allegedly violated. *Kunz v. United Food & Commercial Workers, Local 876*, 5 F.3d 1006, 1010 n.2 (6th Cir. 1993) (affirming the dismissal of claim against a union for breaching its constitution and by-laws because the plaintiff "failed to identify any specific sections in the constitution or by-laws of the union that explicitly provide for just cause termination."); *see also Adams v. Am. Fed'n. of State*, 167 F. Supp. 3d 730, 746 (D. Md. 2016) (dismissing claim that union violated its constitution and by-laws where the plaintiffs "failed to identify any constitutional provision that AFSCME breached."); *Long v. UAW Local No. 674*, 545 F. Supp. 2d 702, 712 (S.D. Ohio 2008) (same).

The amended complaint is deficient in this respect. Slater alleges that APWU violated its own constitution when it precluded her from appealing "the union's decision not to advance the grievance." (ECF No.5, PageID.64, ¶ 61). Yet she neglects to locate where the union's constitution affords her that right.

Slater's attempt to correct this oversight with the supplemental allegations in her response brief is unavailing. (ECF No. 25, PageID.389-92). Courts typically "focus only on the allegations in the pleadings" when considering motions to dismiss. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020). This does not include the plaintiff's response to a motion to dismiss. *Waskul v.*

11

*Washtenaw Cty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020). When "plaintiffs believe they need to supplement their complaint with additional facts to withstand [a motion to dismiss] . . . they have a readily available tool: a motion to amend the complaint under Rule 15." *Id*. They cannot "amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint." *Id.*

Even setting aside this critical omission, Slater's argument that APWU breached its own constitution lacks merit. "Courts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution, and will interfere only where the official's interpretation is not fair or reasonable." *UFCW Local 911 v. UFCW Int'l*, 301 F.3d 468, 478 (6th Cir. 2002) (citation omitted). The standard is tantamount to according "substantial deference to a union's interpretation of its own constitution." *Id.* (cleaned up).

While Slater derives her right to appeal from Article 15 to the union's constitution, as well as its "Members' Bill of Rights," APWU construes those same provisions as governing "internal union discipline" and guaranteeing the right of union members to participate in internal union activities. (ECF No. 27, PageID.405). What is more, APWU insists – based upon the text's plain meaning – that none of these measures permit union members to appeal previously settled grievances. (*Id.*; ECF No. 13-5, PageID.245, 250-58). Since APWU's reading of its own constitution

12

is entitled to substantial deference, the Court finds nothing unfair or unreasonable about this interpretation.

As a result, Slater's claim that APWU breached the union constitution must be dismissed.

E.    *Breach of the Collective Bargaining Agreement*

Lastly, because Slater's fair representation claim fails to state a plausible claim for relief, she cannot proceed against the Postal Service for violating its collective bargaining agreement with the union. *See, e.g., Driver*, 328 F.3d at 870 (affirming the dismissal of a union member's breach of contract claim against the Postal Service after concluding that APWU satisfied its duty of fair representation).

Accordingly,

IT IS ORDERED that the stay previously issued in this matter (ECF No. 20) is lifted.

IT IS FURTHER ORDERED that defendants' renewed motions to dismiss the amended complaint (ECF Nos. 23, 24) are granted.

|  |  |
|---|---|
| Dated:  February 14, 2022<br>Detroit, Michigan | s/Bernard A. Friedman<br>Bernard A. Friedman<br>Senior United States District Judge |